## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

---

| | |
|---|---|
| JOE BROWN and DELORES BROWN | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Case 2:20-cv-02406-SHL-tmp |
| U.S. BANK, N.A., as Trustee for CB4b Grantor Trust 2016-1 and/or Bayview Opportunity Master Fund IVB Grantor Trust 2018-Rn6; LAND HOME FINANCIAL SERVICES, INC.; and RUBIN LUBLIN, PLLC | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

---

### PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

---

Come now the Plaintiffs, Delores and Joe Brown, by and through the undersigned counsel, and submit their Response to the Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure.

### **BACKGROUND**

The Petitioners brought this action on June 1, 2020 in the Shelby County Chancery Court for injunctive and declaratory relief seeking to enjoin the foreclosure of their residence at 4441 Windward Drive in Memphis, Tennessee and for declaratory relief pursuant to Rule 57 of Tenn. R. Civ. P. A Temporary Restraining Order was granted, in the Shelby County Chancery Court during a hearing on June 3, 2020 but the foreclosure sale was cancelled before the Temporary

1

Injunction hearing. The Defendants removed the case to this Court on June 9, 2020 based upon diversity and alleged federal question[1].

## FACTUAL ALLEGATIONS

The Browns, who are more than eighty years old, purchased their home at 4441 Windward Drive in 1970 and have lived in the home since that time. (Doc. 7-1, at p. 4, # 7). In or about 2008, after the purchase money Deed of Trust had been released, Mr. Brown went to a CitiFinancial Services, Inc. office on Elvis Presley Boulevard in Memphis seeking a loan. (Doc. 7-1, at p. 3, # 8).

He apparently signed a "Disclosure Statement, Note and Security Agreement" on April 2, 2008, calling for a loan in the principal amount of $87,387.61, including a "service charge" of $2,255.34. (Doc. 7-1, at p. 3, # 9). The document states that a security interest is granted in the Browns' property at 4441 Windward Drive. (Doc. 7-1, at p. 3, # 10).

Since this was not a purchase money mortgage loan, it would have been subject to the three-day right of rescission provided in the federal Truth-in-Lending Act, 15 U.S.C §1601, *et seq*. and Regulation Z, 12 C.F.R. § 226.39, promulgated pursuant thereto, (Doc. 7-1, at p. 3, # 11). There is nothing in any documents that Plaintiffs' counsel has been able to obtain that the disclosures required by the Act or Regulation Z were provided or that the Browns were given notice of the right of rescission. (Doc. 7-1, at p. 3, # 11).

A purported Deed of Trust was filed with the Shelby County Register of Deeds on April 3, 2008. (Doc. 7-1, at p. 5, # 12). Although the Deed of Trust purports to have been signed by Mr. and Mrs. Brown, only Mr. Brown's signature was notarized. (Doc. 7-1, at p. 3, # 12; Exhibit

---

[1] The Defendants argue in their Brief in support of their Motion that the Plaintiffs raise a claim under the Federal Truth in Lending Act; however, the only mention of the Act in the Complaint is the allegation that the loan proceeds could not have been disbursed at the closing of the loan because there was a three-day Right of Rescission because the loan was a refinance loan as opposed to a purchase money loan.

"A"). Moreover, the Deed of Trust was recorded the day after it was apparently signed, which ignored the Plaintiffs' right of rescission.  (Doc. 7-1, at p. 3, # 12).

Mr. Brown asserts that he never received the proceeds from the loan; nonetheless, he made payments for a while but stopped because he did not believe he owed the debt.  (Doc. 7-1, at p. 4, # 13).

On June 29, 2015 an Affidavit of Lost Note was executed by Cassie Fancher, who states that she is Vice President- Document Control of CitiMortgage, Inc. The document states that CitiMortgage, Inc. provides "certain loan servicing activities" to CitiFinancial Servicing, LLC. The Affidavit goes on to state that the original Note had been transferred to CitiFinancial Servicing, LLC sometime after April 2, 2008, but had been lost.  (Doc. 7-1, at p. 4, # 14).

On September 1, 2015, a Corporate Assignment of Deed of Trust was filed with the Shelby County Register of Deeds purporting to assign the Deed of Trust from CFNA Receivables, Inc. d/b/a CitiFinancial Services, Inc. to CitiFinancial Servicing, LLC. A copy of the Deed of Trust is attached to that assignment. (Doc. 7-1, at p. 4, # 15).

In correspondence dated April 26, 2017, Bayview Loan Servicing, LLC advised Mr. Brown of a "change of creditor" and that the new creditor was U.S. Bank, N.A. as Trustee for CB4b Grantor Trust 2016-1. (Doc. 7-1, at p. 4, # 16).

In correspondence to the undersigned counsel dated October 2, 2018, Bayview Loan Servicing, LLC states that the owner of the alleged mortgage loan is U.S. Bank, N.A. as Trustee for Bayview Opportunity Master Fund IVB Grantor Trust 2018-Rn6. (Doc. 7-1, at p. 4, # 17).

Despite counsel's request for a Settlement Statement or disbursement records relating to the loan, no documents provided by either Bayview Loan Servicing, LLC or Rubin Lublin, PLLC provided any indication of the disbursement of loan proceeds. (Doc. 7-1, at p. 4, # 18)

3

The servicing of the loan has apparently been transferred once again to Land Home Financial Services, Inc. (Doc. 7-1, at p. 5, # 19).

Once again, Rubin Lublin, PLLC had scheduled a foreclosure sale for August 29, 2019. It was continued several times until June 4, 2020, but was stopped by the initiation of this action. (Doc. 7-1, at p. 5, # # 21,24).

## APPLICABLE STANDARD FOR MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b) (6)

The main purpose of a Motion to Dismiss under Rule 12 (b) (6) is to test "whether a cognizable claim has been pleaded in the complaint". *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F. 2d 434, 436 (6th Cir. 1988). "[I]f, in view of what is alleged, it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief, the motion to dismiss should not have been granted" quoting *Continental Colliers, nc. v. Shober*, 130 F. 2d 302, 305 (8th Cir. 1940); *Bell Atlantic v. Twombly,* 127 S. Ct. 1955 (2007).

In *Twombly,* the U.S. Supreme Court set out the standard in determining a motion to dismiss as requiring a statement of fact that is plausible on its face. *Twombly* at 1974.

This standard has replaced the "no set of facts" standard set out in C*onnelly v. Gibson,* 355 U.S. 41, 57 (1957). The *Twombly* Court clearly states that that what is required of the complaint is not a "heightened fact pleading of specifics, but only enough facts to state a claim to relief which is plausible on its face." *Twombly* at 1974. Subsequent to *Twombly,"* [t]he Sixth Circuit has articulated the following as the standard for [Rule] 12 (b) (6) motions: on a motion to dismiss, the Court must construe the complaint in the light that is most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts

to state a claim to relief that is plausible on its face.'" *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*694 F. Supp. 2d 888, 902 (W.D. Tenn. 2010) (citation omitted.) The Court must also "draw all reasonable inferences in favor of the plaintiff." *Evans-Marshall v. Bd. Of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005). Exhibits to a complaint are "part of the pleading." Fed. R. Civ. P. 10 (c). "' The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim.'" *Carbon Processing,* 694 F. Supp. 2d at 902. "Plausibility" is not intended to be an onerous or a heightened requirement, rather, it "comports with [the Supreme] Court's statements in the years since [1957]." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 563* n. 8 (2007). The Supreme Court confirmed after *Twombly* that "[t]he plausibility standard is not akin to a "probability requirement'" *Ashcroft v. Iqball, 129 S. Ct. 1937, 1949* (2009) (quoting *Twombly,* 550 U.S. at 556). Rather, it only requires enough allegations to support a "reasonable inference" of "an entitlement to relief". *Id* at 1949-50.

## ARGUMENT

### THE BROWNS HAVE STATED A CLAIM FOR DECLARATORY RELIEF

This case began as an equitable action against the Defendants seeking to enjoin the foreclosure of their residence located at 4441 Windward Drive, Memphis, Tennessee 38109; to determine the validity of an alleged loan agreement and Deed of Trust executed on or about April 2, 2008; and to clarify the rights of the parties to collect payments from the Petitioner and/or to exercise the Power of Sale clause in the Deed of Trust.

The heart of the Plaintiffs' action is their claim for declaratory judgment. Tenn. Code Ann. § 29-14-102 provides:

29-14-102. General power of courts.

(a) Courts of record within their respective jurisdictions have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

(b) No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.

(c) The declaration may be either affirmative or negative in form and effect and such declaration shall have the force and effect of a final judgment or decree.

Rule 57 of the Tennessee Rules of Civil Procedure dovetails with Tenn. Code Ann. § 29-14-102. It states:

RULE 57: DECLARATORY JUDGMENTS

The procedure for obtaining a declaratory judgment pursuant to Tennessee Code Annotated § 29-14-101 et seq., shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not necessarily preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may it on the calendar.

The Federal Rules of Civil Procedure also provide for declaratory judgments. Federal Rule 57 provides:

Rule 57- Declaratory Judgment

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory judgment action

28 U.S.C. § 2201 states the court "upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought or could be sought."

The Defendants cite a District court decision from the Eastern District of Tennessee for the proposition that actions for Declaratory Judgment under state law are converted to actions

6

under 28 U.S.C. § 2201 upon removal[2]. This point makes little difference as even under relevant Sixth Circuit case law it is clear that the Plaintiffs' claim for declaratory relief should survive the Motion to Dismiss.

Courts in the Sixth Circuit have applied the "*Grand Trunk*" test in evaluating whether to adjudicate a declaratory judgment action. The factors to be considered under this analysis are:

1) Whether the declaratory action would settle the controversy;
2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction, and;
5) Whether there is an alternative remedy which is better or more effective.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir. 1984)

It cannot escape comment that there is an irony in the Defendants' raising this issue since it was they who removed the case from state to federal court. In *Grand Trunk,* a railroad company initiated an action for declaratory judgment in federal court in the midst of complex state court litigation involving an indemnity agreement, which was currently pending in the state court in Illinois. Applying the factors set out above, the court declined to exercise its discretion to get involved in the dispute, reasoning that the state court should resolve the issue that the plaintiff sought to put before the federal court. *Id.*

Nonetheless, in applying the factors to consider under the *Grand Trunk* analysis, it is clear that this Court should exercise its discretion to hear the declaratory action. Obviously, Tennessee is not a judicial foreclosure state and a homeowner who wants to challenge the legality or propriety of the exercise of the Power of Sale clause in a Deed of Trust must do so

---

[2] Defendant's Brief in Support of Motion to Dismiss, p. 5, footnote 4

through a lawsuit. This is what Mr. and Mrs. Brown did, only to have the Defendants remove the case to this Court and argue that under federal case law this Court should not hear the action.

With respect to the second issue, again, the declaratory action is the only way to clarify the validity of the Deed of Trust. In fact, the Chancery Court, or this Court on removal is the only avenue the Plaintiffs have to raise these issues about lack of consideration for the execution of the Deed of Trust on their home. Therefore the declaratory action is the only way to settle the controversy.

Unlike the action in the *Grand Trunk* case, the Browns are not seeking to usurp the authority of another court that is considering the issue. Rather, the Defendants brought the issue before this Court.

In considering the last two factors, entertaining the declaratory action does not encroach upon the state court beyond any other removal based upon diversity and, if the Court believes it does, the appropriate remedy would be a remand to the state court. Finally, as set forth above, there is not a more effective alternative to resolving this issue.

The Defendants, in a conclusory statement, argue that the Browns have failed to state a claim that will support a declaratory judgment "as there is no controversy as to the validity of the Loan and the enforceability of the Note and Deed of Trust." (Defendants' Brief, Doc 8-1, p. 5). To the contrary, through their Complaint, the Browns have alleged that Mr. Brown went to a CitiFinancial Services, Inc. office seeking a loan;

- that he signed a "Disclosure Statement, Note and Security Agreement" on April 2, 2008, calling for a loan in the principal amount of $87,387.61 and granting a security interest in the Browns' property at 4441 Windward Drive;

- that the loan would have been subject to the three-day right of rescission provided in the federal Truth-in-Lending Act and loan proceeds should not have been disbursed until the right of rescission had expired;

- that the Plaintiffs assert they did not receive the loan proceeds;

- that there is nothing in any documents that Plaintiffs' counsel has been able to obtain that the disclosures required by the Act or Regulation Z were provided or that the Browns were given notice of the right of rescission;

- that the loan proceeds should not have been distributed until after the three-day right of rescission had expired;

- that the Deed of Trust purports to have been signed by Mr. and Mrs. Brown, but only Mr. Brown's signature was notarized;

- that a purported Deed of Trust was filed with the Shelby County Register of Deeds on April 3, 2008, one day after the loan agreement was apparently signed in derogation of the right of rescission;

- that an Affidavit of Lost Note was filed in 2015 stating that an agent for CitiFinancial had had the Note, but had subsequently lost it;

- that none of the Defendants had produced a Settlement Statement or dispersal records in spite of counsel having requested them.

There are a number of irregularities associated with the transaction cited in the Plaintiffs' Complaint which make the Plaintiffs' allegation that they did not receive the loan proceeds plausible within the meaning of the *Twombley* standard for review of motions to dismiss.

1. **The Browns Have Not Raised a Claim Under the Truth-in –Lending Act**

The Defendants argue that the Plaintiffs are barred from asserting claims under the Truth-in-Lending Act, 15 U.S.C §1601, *et seq*. and Regulation Z, 12 C.F.R. § 226.39, promulgated pursuant thereto because the relevant statutes of limitation have run. Further, they argue that the loan servicer and trustee have no liability for Truth-in-Lending violations. However, the Browns did not seek relief pursuant to the Act. The Plaintiffs do assert that the recording of the Deed of Trust the day after it was executed was in derogation of the three day right of rescission provided in non-purchase money mortgage loans, but seek no direct relief for it because an action for damages or rescission would be barred by the statute of limitations. Rather, the Plaintiffs have alleged that the loan proceeds could not legally have been distributed at the time of the closing. The fundamental allegation raised by the Browns is that they never received the loan proceeds and have been furnished no documents such as a Settlement Statement or disbursement records, in spite of formal request, to show whether the loan was funded and, if so, what happened to loan proceeds. Although these allegations are not claims for relief, they demonstrate the necessity for declaratory relief. Obviously, if there was no dispersal of loan proceeds there would be no consideration for the executed documents.

2. **The Browns do Not Assert that the Deed of Trust is Void as to Mrs. Brown Because her Signature was Not Notarized**

While the Plaintiffs allege that the signature of Mrs. Brown on the recorded Deed of Trust was not notarized, raising additional questions about the bona fides of the transaction, the Plaintiffs have not contended that the transaction is void because it was not properly notarized. Rather, the Browns assert that the Deed of Trust is unenforceable because there was no valid consideration or dispersal of loan proceeds. The lack of notarization is but one of a number of irregularities regarding the loan.

3.**The Browns Should Not be Judicially Estopped From Denying They Received the Proceeds From the Alleged Loan Because of Prior Bankruptcy Filings**

The Defendants rest much of their argument for dismissal of the Browns' Complaint upon the theory of judicial estoppel because of Mr.Brown's failure to contest the validity of the mortgage debt in a previous bankruptcy filing. This argument is without merit.

Judicial estoppel is an equitable doctrine created to protect judicial integrity. *Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co*., 278 F. Supp. 3d 1025, 1047-48 (E.D. Tenn. 2017) *citing New Hampshire v. Maine,* 532 U.S. 742, 750 (2001).  It is designed to prevent parties from **intentionally** "changing positions according to the exigencies of the moment. *Id* (quoting *United States v. McCusky*, 9 F.3d 368, 378 (5th Cir. 1993). (Emphasis added.). The court went on to articulate factors to be considered in deciding whether to invoke the doctrine of judicial estoppel:

> First, a party's subsequent position must be "clearly inconsistent" with its earlier position *Id.* Second, the party's prior position was actually successful in persuading the prior court, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Id.* (citation omitted.)  Finally, the party asserting the inconsistent position would obtain an unfair advantage over the opposing party if not estopped. *Id.* at 751, 121 S. Ct. 1808.
> *Am. Guarantee* at 1048.

 The Defendants attempt to stretch the doctrine to epic proportion by arguing that the Plaintiffs' assertion that they did not receive the loan proceeds is "clearly inconsistent" with schedules prepared by Mr. Brown's bankruptcy attorney.  While Mr. Brown signed an oath that the schedules were true and correct under penalty of perjury, he is an elderly layman and quite likely did not understand much of the language and implications of the schedules. It is quite possible that he did not pay as much attention as he should have to the information; however, it is a stretch to argue that his signature on Chapter 13 petition schedules is tantamount to a clearly

articulated position in prior litigation sufficient to prevent him from asserting that he did not receive the loan proceeds. Unlike the *American Guarantee* case, there are no pleadings clearly articulating a legal theory in the bankruptcy petition. Moreover, judicial estoppel was ultimately not applied in that case. *Id.*

In turning to the second factor, the only court ruling associated with the petition and schedules was confirmation of the plan. The Defendants acknowledge that the bankruptcy case was soon dismissed because of Mr. Brown's refusal or failure to make payments. This is somewhat analogous to the situation in *American Guarantee* in which the prior lawsuit with inconsistent theory settled before there was any final adjudication of the issue. The court there stated:

> (a)fter considering these factors, it is apparent judicial estoppel is not appropriate here. Norfolk's prior position was not successfully asserted in the Cross-Gallagher suit. This fact is fatal to AG's argument. Judicial estoppel may not be applied unless the previous court accepted the prior position. *Edwards,* 690 F.2d at 599. Since the prior lawsuit settled, the Tennessee trial court did not accept Norfolk's position about the overgrown vegetation's role in the accident. A position is not accepted by a court if the proceeding in which it was raised is settled. *Id.* ("a settlement neither requires or implies any judicial endorsement of either parties claims or theories, and thus, a settlement does not provide the prior success necessary for judicial estoppel" (quoting *City of Kingport v. Steel & Roof Structures, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974) ). *Id.*

The Defendants argue that *Reynolds v. C.I.R.*, 861 F.2d 469 (6th Cir. 1988) provides authority that a bankruptcy court's acceptance of a party's position is sufficient to invoke the application of judicial estoppel. However, that case involves the Internal Revenue Service's entering a Stipulation of Settlement, with a debtor in an extremely complex and lengthy litigation. The IRS then pivoted and took a completely contrary position. The bankruptcy court approved the extensively negotiated Stipulation between the parties and the Sixth Circuit found that this was a sufficient basis to invoke the doctrine against the IRS. *Id.* The *Reynolds* case

provides no authority that statements in routine bankruptcy schedules are a basis for invoking the equitable doctrine of judicial estoppel.

Finally, the third factor articulated by the *American Guarantee* court is not met in this situation. In spite of the argument of the Defendants, there was no unfair advantage realized by Mr. Brown that would justify the invocation of the equitable doctrine. Apart from the automatic stay, which was issued upon filing and before the bankruptcy schedules, it would not seem that Mr. Brown gained any advantage by the bankruptcy filing. To the contrary, he incurred fees and may have made payments on the debt he disputes.

For all of these reasons, the Court should not find that Mr. Brown is estopped from seeking the declaratory and injunctive relief he now seeks.

## **CONCLUSION**

For all of the foregoing reasons, the Plaintiffs respectfully request that the Court deny the Defendants' Motion to Dismiss.

Respectfully Submitted,

THE LAW OFFICES OF WEBB A. BREWER, PLC

By: S/  Webb A. Brewer
Webb A. Brewer (B.P.R. No. 9030)
1755 Kirby Parkway, Suite 110
Memphis, TN 38120
Telephone: (901) 757-3358\
Facsimile: (901) 757-3361\
webbbrewer@comcast.net

.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2020, the foregoing pleading has been served by

electronic mail via the Court's electronic system or the United States mail, postage prepaid,

to counsel for the Defendants.

S/Webb A. Brewer